UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

ALLEN TAYLOR

        Plaintiff,

v.

ALORE, LLC

        Defendant.

Case No.: 3:19−cv−05086−BHS

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR LEAVE TO AMEND COMPLAINT**

**NOTE ON MOTION CALENDAR:
June 28, 2019**

### I. INTRODUCTION

Plaintiff should be permitted to amend his complaint because of the broad policy favoring amendment. Rule 15 "sets forth a very liberal amendment policy." *Rain Gutter Pros, Ltd. Liab. Co. v. MGP Mfg., Ltd. Liab. Co.,* No. C14-0458 RSM, 2015 U.S. Dist. LEXIS 141340 at *3 (W.D. Wash. Oct. 15, 2015) (citing *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)); *McEuen v. Riverview Bancorp, Inc.*, No. C12-5997 RJB, 2013 U.S. Dist. LEXIS 24038 at *7 (W.D. Wash. Feb. 21, 2013) ("the policy of favoring amendments to pleadings should be applied with extreme liberality"). A party should be permitted to add new facts, and claims based on those new facts, absent 1) undue delay; 2) bad faith or dilatory motives; 3) a failure to timely cure any deficiency in the original complaint; 4) any prejudice to Defendant; or 5) futility in adding new claims. None of these limitations apply here. Plaintiff seeks to amend his complaint because of additional information acquired from informal exchange of documents between the parties following a meet and confer process regarding Defendant's erroneously plead affirmative defenses.

This case is still in the early stages of litigation and well before the July 15, 2019 deadline for amended pleadings. Further, Defendant has failed to amend its answer to the

original complaint, to which Defendant agreed on May 8, 2019. Plaintiff's Motion to Amend, at 1.  The amended complaint in no way prejudices Defendant.

## II. ARGUMENT

Defendant's opposition to Plaintiff's request for leave to amend his complaint is, in fact, an odd combination of a motion to dismiss masquerading as an opposition to a motion for leave to amend.  Alore's fundamental argument is that Plaintiff's request for leave to amend should be denied because, to their view, Plaintiff seeks to amend his complaint solely to seek attorney's fees (although count II, which was originally plead, is a state claim which *already* includes the ability to recover attorneys' fees) and because it is their contention that amendment would be futile.  Nothing could be further from the truth. First, if any party is forcing increased attorneys' fees, it is the Defendant by raising improper affirmative defenses and time-wasting motions such as this. Second, Plaintiff's additional claims, which are based on new facts, are anything but futile, as expounded below.

### A. Plaintiff's Motion to Amend is Based on Newly Discovered Facts

Plaintiff seeks to amend his complaint because, as laid out in Plaintiff's motion, Plaintiff has discovered new facts concerning the telephone system used by Defendant, the nature of that automated system, and the fact that many of the calls placed by Defendant use a machine that automatically plays a prerecorded voice announcement.  At the time of filing the original complaint, Plaintiff's counsel was aware Alore had left Plaintiff automated prerecorded voicemail messages on Plaintiff's cell phone. However, Plaintiff's counsel only learned after information exchange and further discussions that Alore had also used an "automatic dialing and announcing device" to solicit Plaintiff's business after he had asked Alore to stop calling and stop shipping him products. The nature of the announcing device used could only have been discovered after discussion and the exchange of documents, which occurred during the meet and confer process concerning Defendant's affirmative defenses.  This is precisely the type of situation that the liberal federal policy concerning amendment was crafted to address.  Plaintiff's additional counts IV (RCW 80.36.400 - Washington Dialing and Announcing Device, or

2

"WADAD") and V (RCW 80.36.390 - Washington Do Not Call Statute, or "WDNC") directly address the newly discovered facts that Plaintiff was robotically solicited by Alore, without permission, using an automatic dialing and announcing device which automatically dialed Plaintiff's cell phone and played a recorded message once a connection was made. When answering calls, Plaintiff had difficulty getting to a live person to tell Alore to stop annoying him; he had to try selecting various options because there was no clear option to "opt-out" of continued calls.

Additionally, Plaintiff became aware through the information provided by Defendant, that the number of calls after Plaintiff's initial revocation was closer to fifty (50) calls, and Plaintiff requests to properly amend his complaint to reduce the number of calls. Obviously, this provides no benefit to Plaintiff, but is based on newly learned facts. As Defendant is aware, and as stated in Plaintiff's motion to amend, cellular service providers do not provide customers with records of *missed* calls; they only provide records of *connected* calls. Plaintiff provided Defendant with Plaintiff's Verizon records showing sixteen (16) connected calls since June 2018 that Plaintiff alleges were all revocations; thus far, Alore has refused to provide the recordings of those calls. Without seeing Alore's call logs, which Plaintiff would have obtained through discovery nonetheless, it is impossible for Plaintiff to know the exact number of calls made by Defendant; the new information in the call records provided clarification regarding the number of calls, leading to the requested amendment.

**B. The Calls from Alore were "Unsolicited Advertisements"**

Defendant contends that Plaintiff's amendment will be futile because its calls to Plaintiff were not "telephonic solicitations as a matter of law." Defendant's Opposition to Plaintiff's Motion to Amend, at 4. However, authority does not support Defendant's contention.

The facts in *Chesbro* (a case cited by Defendant in its opposition) are nearly identical to the facts here with respect to whether Defendant's calls were solicitations. *Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913 (9th Cir. 2012). In *Chesbro*, Plaintiff purchased a computer from a Best Buy store and enrolled in a rewards program. *Id.* at

915. After receiving "many automated 'robot' calls," he "specifically asked for all marketing calls to cease." *Id*. at 916. Best Buy argued that the calls were "purely information courtesy calls to [rewards] members." *Id*. The court disagreed and ruled:

> In sum, these calls were aimed at encouraging listeners to engage in future commercial transactions with Best Buy to purchase its goods. **They therefore constituted unsolicited advertisements**, telephone solicitations, and telemarketing **within the meaning of the TCPA** [Telephone Consumer Protection Act], **the WADAD, and the WCPA** [Washington Consumer Protection Act].

*Id*. at 919. First the court looked to the TCPA definition of "unsolicited advertisement," which is a violation under the TCPA. *Id*. at 917 (citing 47 U.S.C. § 227(b)(2)(B)(ii)). "'[U]nsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission...." *Id*. (citing 47 U.S.C. § 227(a)(5)). The court further considered that even "dual purpose" calls, which have "both a customer service or information component as well as a marketing component," are **prohibited** by the Federal Communications Commission ("FCC"). *Id*. (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order,* 18 FCC Rcd. 14014, 14095 ¶ 136, 2003 WL 21517853 (F.C.C. July 3, 2003) ("2003 Report and Order")). The court flatly determined "If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement." *Id*. at 918. The court reasoned that "[A]pplication of the prerecorded message rule should turn, not on the caller's characterization of the call, but on the purpose of the message" and determined the purpose of the calls was to "encourage[e] the listener to make future purchases at Best Buy." *Id*. (also citing 2003 Report and Order at 14098 ¶ 141).

Here, just as in *Chesbro*, the purpose of Defendant's calls was to encourage Plaintiff to make future purchases from Defendant. Further, as in *Chesbro*, Plaintiff here repeatedly asked not to be called. As stated in Plaintiff's motion to amend, both parties agree that Plaintiff unequivocally revoked consent for Alore to call him or send him

4

products; the only dispute is about the date of that revocation. Plaintiff's Motion to Amend, at 2. Since Defendant received no <u>written consent</u> from Plaintiff after his revocation, Defendant had ***no prior consent*** to call him, a fact Defendant fails to acknowledge. The *Chesbro* court chided Defendants: "Any assertion that the calls were not "unsolicited advertisements" because the statutory definition of that term excludes communications made with the recipient's "prior express invitation or permission" is unsupported by the record, which shows, instead, that Chesbro repeatedly asked not to be called." *Id*. Here, Defendant's claim that it had prior express permission to call Plaintiff is also unsupported by the record. The Ninth Circuit in *Chesbro* reversed the decision from the Western District of Washington and found that Best Buy had violated the TCPA, the WADAD, and the WDMC, the very same claims brought here by Plaintiff.[1]

### C. The HIPPA TCPA Exception is Inapplicable

Defendant also contends that Plaintiff's amendment will be futile because, broadly speaking, Defendant is in the medical supply business, and there is a Health Insurance Portability and Accountability Act ("HIPPA") TCPA exception for calls "intended to communicate health care-related information rather than to offer property, goods, or services" which should be applied to the Washington state counts which Plaintiff seeks to add.  Defendant's Opposition to Plaintiff's Motion to Amend, at 4 (citations omitted). However, Defendant fails to explain how *unsolicited* calls to Plaintiff to "reorder diabetic test strips" are <u>*not*</u> "offers to purchase goods" from Defendant. Defendant also tries to "bend to its will" the holding in *Chesbro* to force an argument that the TCPA HIPPA exception should apply here.

Defendant's argument to apply the TCPA HIPPA exception to *Taylor* is nonsensical. First Defendant conspicuously fails to challenge Plaintiff's TCPA claims: "At this time, Alore is not challenging the pleading sufficiency of Plaintiff's TCPA claim ("Count I"), or his state common law claim for Intrusion Upon Seclusion ("Count III")."

---

[1] Note: In its opposition, Defendant uses *Chebro* to urge this Court to apply the federal TCPA rules and definitions to interpret WADAD and WDNC, but *ONLY* so that the Court will infer a TCPA HIPPA exception into Plaintiff's state claims. Defendant conspicuously ignores *Chesbro's* actual holding, which was to infer the TCPA's interpretation of "unsolicited advertisements" into WADAD and WDNC.

Defendant's Motion for Judgment on the Pleadings, at 1. Yet, in Defendant's opposition to Plaintiff's amendment, Defendant asks this Court to look to the 2012 FCC orders implementing the *TCPA* to interpret *Washington state statutes* WADAD and WDNC, but *only* for the purpose of applying the TCPA HIPPA exception to the state statutes. It is confounding that Defendant does not argue the TCPA HIPAA exception applies to Plaintiff's *TCPA* claims but argues the Court should stretch interpretation only to apply the HIPPA TCPA exception to Plaintiff's Washington state claims, while providing no authority that Washington has ever applied the TCPA HIPPA exception to WADAD or WDNC.

However, even if this Court accepts that the HIPPA TCPA exception *does* apply to WADAD and WDNC, Defendant's argument still fails for two reasons, 1) HIPPA requires *written consent* for marketing calls (which Defendant did not have), and 2) Defendant's calls do *not* qualify as protected communications under the TCPA HIPPA exception, according to the very authority which Defendant cites. First, as described above, calls from Alore were marketing solicitations to a consumer who was *not* Alore's customer and who had *not provided written consent after revocation*.

> The Department of Health and Human Services (HHS) explains that HIPAA protects individually identifiable health information held or transmitted by a covered entity . . . In addition to limiting the use or disclosure of health information for *treatment*, *payment*, or *health care operations* or otherwise permitted or required disclosures, **HIPAA restricts the use of this information for marketing. Unless the covered entity secures the individual's <u>written authorization</u>,** HIPAA allows marketing *only* if the communication imparts information about a product or service that is included in a health care benefits plan offered by the covered entity, gives information concerning treatment, or describes goods or services for case management or care coordination.

*Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 27 FCC Rcd. 1830, 1855 ¶ 61 (2012) (emphasis added) ("2012 TCPA Order"). Alore was not the provider of a health-care benefits plan to Plaintiff. Alore was simply trying to push its diabetic test strips products onto Plaintiff, knowing that they would be fully paid for by Medicare even if Plaintiff did not want them.

Second, as *Jackson*, the case cited by Defendant for this proposition, makes clear, the HIPPA exception is nowhere near as broad and all-encompassing as Defendant would have this Court believe. The exempt calls are limited to "appointment and exam confirmations and reminders, wellness checkups, hospital pre-registration instructions, pre-operative instructions, lab results, post-discharge follow-up intended to prevent readmission, prescription notifications, and home healthcare instructions." *Jackson v. Safeway, Inc.*, 2016 U.S. Dist. LEXIS 140763 *11 (N.D. Cal. 2016), (citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* (hereinafter "1991 Order"), 30 F.C.C. Rcd. 7961, 8030-31 [*11] ¶¶ 143, 146 (July 10, 2015). Although Defendant contends that Alore's calls requesting Plaintiff to order diabetic test strips were "medical supply and prescription refill requests," in fact, such test strips are sold over the counter without a prescription and Plaintiff has never had a prescription for them. Defendant's claim it was calling to request "prescription refills" misleads the Court. Defendant's Opposition to Plaintiff's Motion to Amend, at 4. Alore's calls fall into NONE of the above categories deemed HIPPA-protected communications.

Furthermore, even for those calls that do fall into the categories listed above, they:

"must *also* satisfy **each** of the following requirements to be exempt:

1) voice calls and text messages must be sent, if at all, only to the wireless telephone number provided by the patient;
2) voice calls and text messages must state the name and contact information of the healthcare provider (for voice calls, these disclosures would need to be made at the beginning of the call);
3) voice calls and text messages are strictly limited to the purposes permitted in para. 146 above; must not include any telemarketing, solicitation, or advertising; may not include accounting, billing, debt-collection, or other financial content; and must comply with HIPAA privacy rules;
4) voice calls and text messages must be concise, generally one minute or less in length for voice calls and 160 characters or less in length for text messages;
5) a healthcare provider may initiate only one message (whether by voice call or text message) per day, up to a maximum of three voice calls or text messages combined per week from a specific healthcare provider;

6) a healthcare provider must offer recipients within each message an easy means to opt out of future such messages, voice calls that could be answered by a live person must include an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the call recipient to make an opt-out request prior to terminating the call, voice calls that could be answered by an answering machine or voice mail service must include a toll-free number that the consumer can call to opt out of future healthcare calls, text messages must inform recipients of the ability to opt out by replying " "STOP," which will be the exclusive means by which consumers may opt out of such messages; and,

7) a healthcare provider must honor the opt-out requests immediately."

*Jackson*, 2016 U.S. Dist. LEXIS 140763 *11-12, citing 1991 Order at 8032 ¶ 147 (the "Exigent Healthcare Treatment Exemption").

In the present case, Plaintiff alleges that the calls placed to Plaintiff: 3) included telemarketing, solicitation, or advertising; 5) occurred more than once per day, and more than three times per week; 6) did not offer an easy means to opt out of future such messages; and 7) Defendant did not honor the repeated opt-out requests by Plaintiff. Thus, Defendant's argument that its calls qualified as HIPPA-protected communications fails.

### III. CONCLUSION

Putting aside the fact that Defendant's arguments are more properly addressed in a motion to dismiss or motion for summary judgment and are not properly presented in an opposition to Plaintiff's Motion to Amend his complaint, Plaintiff's amendments are clearly not futile.

Plaintiff seek to amend his complaint to add new facts and claims, at literally the earliest possible time upon learning those facts. Plaintiff

1) has not engaged in any undue delay;
2) has not shown in any bad faith or dilatory motives;
3) is not trying to cure any deficiency in the original complaint that could have been known to Plaintiff on filing his complaint;
4) has done nothing to prejudice the Defendant; and
5) the amendment would not be futile.

8

Further, Defendant has still not amended its answer to the original complaint, to which it agreed on May 8, 2019, and Plaintiff's amendment was filed well before the July 15, 2019 deadline for amended pleadings.

For the forgoing reasons, Plaintiff's Motion to Amend his Complaint should be granted.

RESPECTFULLY SUBMITTED,

DATED: June 28, 2019

*/s/Dawn M. McCraw*
Dawn M. McCraw, WSBA #54543
Price law Group, APC
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5585
F: (866) 683-3985
E: dawn@pricelawgroup.com
*Counsel for Plaintiff*
*Allen Taylor*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter.

PRICE LAW GROUP, APC

*/s/Jacey Gutierrez*