**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**TACOMA DIVISION**

| | |
|---|---|
| ALLEN TAYLOR | **Case No.: 3:19−cv−05086−BHS** |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ALORE, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| ALORE, LLC | |
| Defendant. | |

Plaintiff Allen Taylor ("Plaintiff"), hereby submits this Memorandum of Law in Opposition to Defendant Alore, LLC's ("Defendant's") Motion for Judgment on the Pleadings as to Plaintiff's Count II for alleged violations of the Washington Consumer Protection Act ("CPA"). (Doc. 25). The Court should deny Defendant's motion because Plaintiff has properly plead facts which establish a CPA cause of action. Further, contrary to Defendant's claim, Washington courts have not broadly determined that "telephone solicitations are insufficient to sustain a CPA claim."

Under Washington law, there are two independent approaches for a plaintiff to satisfy a CPA private action claim and Plaintiff does, as a matter of law, successfully establish his CPA claim through both methods.

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................. 1

II.    LEGAL STANDARD ........................................................................... 1

III.   FACTS RELEVANT TO THIS MOTION ........................................... 2

IV.    ARGUMENT ........................................................................................ 4

   A.    Defendant's Violations Of WADAD Are *Per Se* Violations Of The CPA ..... 4

     1.    *Plaintiff's WADAD Claim Is Valid* ................................................ 4

     2.    *The FCC Has Promulgated Two Exceptions To The TCPA For Certain Calls Related to Health Care Which Are Relevant Here* ......................... 5

     3.    *Alore's Calls Were "Telemarketing" Calls; The TCPA "Health Care Rule" Exception Does Not Apply Because Alore Did Not Have Consent To Call Plaintiff* ............................................................ 7

       a)    To Qualify For The TCPA Health Care Rule Exception, The Caller Must Be A "Covered Entity" or "Business Associate" And Have "Consent." .................... 7

       b)    Telemarketing Calls Covered By The TCPA Health Care Rule Exception Require Prior Consent; Without Consent, They Are Just Telemarketing Calls. .................... 9

     4.    *If Alore's Calls Were Covered By The "Health Care Treatment" Exception, Alore Violated The FCC Order Creating The Exception And Therefore Does Not Qualify For Exemption* ................................... 12

   B.    Plaintiff's Complaint Satisfies All Five (5) Elements Of A CPA Claim ...... 14

     1.    *Unsolicited Calls To Plaintiff After Clear Revocation Are Unfair Or Deceptive Acts* ......................................................... 14

     2.    *Defendant's Commercial Solicitation Calls to Plaintiff Clearly Occurred As Part Of Trade Or Commerce* .................................... 15

     3.    *The TCPA Was Enacted To Impact Public Interest.* ........................ 15

     4.    *Plaintiff Has Sustained Injury In His Property.* ........................... 16

     5.    *Alore's Actions Are The Cause Of Plaintiff's Injury.* ..................... 20

V.     CONCLUSION .................................................................................. 20

1

## <u>TABLE OF AUTHORITIES</u>

2

3    **Cases**

4    *Aldabe v. Aldabe,*
5        616 F.2d 1089, 1093 (9th Cir. 1980) ................................................................. 2

6    *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997) ......................... 11

7    *Christensen v. Harris Cty.,*
        529 U.S. 576, 588, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000) ..................................... 11

8    *Coleman v. Rite Aid of Georgia, Inc.,*
9        284 F. Supp. 3d 1343 (N.D. Ga. 2018) ........................................................... 6, 11, 12, 14

10   *Duguid v. Facebook, Inc.,*
        No. 17-15320, 2019 U.S. App. LEXIS 17675 (9th Cir. June 13, 2019) ....................... 16
11
     *Gragg v. Orange Cab Co., Inc.,*
12       942 F.Supp.2d 1111, 1117–18 (W.D. Wash. 2013) ............................................. 4, 16, 18

13   *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,*
14       896 F.2d 1542, 1550 (9th Cir. 1990) ................................................................. 2

15   *Hangman Ridge v. Safeco Title*,
        105 Wash. 2d 778, 783 (Wash. 1986) ......................................................... 4, 14
16
     *Heliotrope Gen., Inc. v. Ford Motor Co.,*
17       189 F.3d 971, 981 n18 (9th Cir. 1999) ............................................................. 2

18   *Jackson v. Safeway, Inc.,*
19       No. 15-CV-04419-JSC, 2016 U.S. Dist. LEXIS 140763 (N.D. Cal. Oct. 2016) .... passim

20   *Mason v. Mortgage Am., Inc.,*
        792 P.2d 142 (1990) ................................................................................... 19
21
     *Moritz v. Daniel N. Gordon,* P.C.,
22       895 F. Supp. 2d 1097 (W.D. Wash. 2012) ..................................................... 15

23   *Nordstrom, Inc. v. Tampourlos,*
        733 P.2d 208 (1987) ................................................................................... 19
24
     *NW. Airlines, Inc. v. Ticket Exch., Inc.,*
25       793 F.Supp. 976 (W.D.Wash., 1992) ........................................................... 19

26   *Panag v. Farmers Ins. Co. of Washington,*
        204 P.3d 885 (2009) ................................................................................... 19
27

28

PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MJOP
CASE # 3:19−CV−05086−BHS

*Sorrel v. Eagle Healthcare, Inc.*,
  298, 38 P.3d 1024 (2002) ............................................. 19

*Stephens v. Omni*,
  138 Wn. App. 151, 179-80 (Wash. Ct. App. 2007)......................... 20

*Sullivan v. All Web Leads, Inc.*,
  No. 17-C-1307, 2017 U.S. Dist. LEXIS 84232, 2017 WL 2378079 (N.D. Ill. June 2017)
  ............................................................ 10

*Vawter v. Quality Loan Service Corp.*,
  707 F. Supp. 2d 1115 (W.D. Wash. 2010) ............................... 2

*Webb v. Ray*,
  688 P.2d 534 (1984) ................................................. 19

*Wick v. Twilio Inc.*,
  No. C16-00914RSL, 2017 WL 2964855 (W.D. Wash. July 2017) .......... 16, 17

*Yang v. Dar Al–Handash Consultants*,
  250 Fed. Appx. 771, 772 (9th Cir. May 21, 2007) ....................... 2

*Zani v. Rite Aid Headquarters Corp.*,
  246 F. Supp. 3d 835, 845-46 (S.D.N.Y. 2017)........................... 10

**Other Authorities**

Congressional Record – *Senate Proceedings and Debates of the 102nd Congress, First
  Session*. July 11, 1991, 137 Cong. Rec. S9840, S9874 ................... 16

*Consumer & Governmental Affairs Bureau Seeks Comment on Petition for Expedited
  Declaratory Ruling & Exemption from Am. Ass'n of Healthcare Admin. Mgmt.*, 29 FCC
  Rcd. 15267, 15267 n.7 (Dec. 17, 2014), 2014 WL 7188888 ................ 11

*In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*,
  27 FCC Rcd. 1830, 1838 ¶ 20 (Feb. 2012) ("2012 TCPA Order") .............. 6

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
  30 F.C.C. Rcd. 7961 ("2015 TCPA Order") .................... 6, 9, 12, 13

RCW 80.36.400, Legislative finding—1986 c 281 § 1 ..................... 12

**Rules**

Fed. R. Civ. Proc. 12(c) ............................................. 1

Fed. R. Civ. Proc. 12(h)(2) ........................................... 1

Rule 12(b)(6) ......................................................... 2

**State Statutes**

RCW 19.86 (CPA)................................................................................................. 4, 14, 15

RCW 80.36.400 (WADAD) ................................................................................... 4, 12, 14

**Federal Statutes**

47 U.S.C. § 227 ....................................................................................................... 5, 6, 15

## I.  INTRODUCTION

Plaintiff has brought claims against Defendant Alore for violations of the Telephone Consumer Protection Act ("TCPA"), Revised Code of Washington's Unfair Business Practices – Consumer Protection Act Chapter 19.86. ("CPA"), Invasion of Privacy – Intrusion Upon Seclusion, Revised Code of Washington's Dialing and Announcing Device Act 80.36.400 ("WADAD"), and Revised Code of Washington's Telephone Solicitation Act 80.36.390 ("WDNC"). This opposition is in response to Defendant's Motion for Judgment on the Pleadings regarding only the CPA claim[1]; however, Plaintiff's WADAD claim is implicated, as discussed more fully herein, and will also be expounded upon.

This Court should deny Defendant's motion for judgment on the pleadings because the Court cannot, as a matter of law, determine that Defendant did not violate the CPA. Plaintiff satisfies two independent, alternative means of showing a violation of the CPA in a private action; (1) Defendant cannot show, by law, that it did not violate WADAD, which provides a statutory inference that the CPA was violated; and (2) Defendant cannot show, by law, that Plaintiff has failed to establish the five *Hangman Ridge* elements. For these reasons, set forth more fully below, Plaintiff respectfully requests this Court deny Defendant's motion for judgment on the pleadings.

## II. LEGAL STANDARD

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings any time after the pleadings are closed, so long as the motion is filed in sufficient time that it will not delay trial. Fed. R. Civ. Proc. 12(c). A defense of failure to state a claim upon which relief can be granted can be raised in a motion for judgment on the pleadings. Fed. R. Civ. Proc. 12(h)(2); *Aldabe v. Aldabe,* 616 F.2d 1089,

---

[1] Defendant filed concurrently this motion for judgment on the pleadings regarding Plaintiff's CPA claim and an opposition to Plaintiff's motion for leave to amend, which amended facts based on new information learned after the original complaint was filed and added two state law claims, WADAD and WDNC. The CPA and WADAD are intertwined through statute as discussed herein.

1093 (9th Cir. 1980) ("Rule 12(h)(2) should be read as allowing a motion for judgment on the pleadings, raising the defense of failure to state a claim, even after an answer has been filed").

Motions for judgment on the pleadings based on a failure to state a claim and motions to dismiss under Rule 12(b)(6) "are functionally identical, [and] the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine, Inc.,* 867 F.2d 1188, 1192 (9th Cir. 1989). "For the purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir. 1990).

In deciding a motion for judgment on the pleadings, the court is generally limited to the pleadings and may not consider extrinsic evidence. However, a district court may consider (1) exhibits to the nonmoving party's pleading, (2) documents that are referenced in the non-moving party's pleading, and (3) facts that are included in materials that can be judicially noticed. *Yang v. Dar Al–Handash Consultants*, 250 Fed. Appx. 771, 772 (9th Cir. May 21, 2007).

## III.   FACTS RELEVANT TO THIS MOTION

The facts as plead by Plaintiff and restated below must accepted as true for the purposes of this Rule 12(c) motion. *Vawter v. Quality Loan Service Corp.,* 707 F. Supp. 2d 1115 (W.D. Wash. 2010) ("the court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party").

Plaintiff, who is seventy-two (72) years old, will testify that back in 2017 he completed a website form offering free diabetic test supplies. (Doc. 21-2 ¶¶12, 15) He later learned that the products were not actually "free," but were instead wholly paid for by Medicare directly to Alore. (*Id.*)

In or around June 2018, after Plaintiff had received more "free" supplies than he could use, he asked Alore to stop sending him supplies, cancel his account, and stop calling

him. (*Id*. ¶16) However, Plaintiff continued to be bombarded by prerecorded telemarketing robocalls and automated prerecorded voicemails. (*Id*. ¶¶ 24, 31) Through the informal exchange of documents in this case, Plaintiff has already provided Defendant his cell phone records showing at least ten (10) calls from Alore where he answered and revoked consent. Even though Plaintiff was no longer a customer of Alore after his first revocation (as he had expressly terminated any prior relationship) he continued to receive unwanted telemarketing calls from Alore. (Doc. 19 at 3) Not only was there no *easy* way for Plaintiff to "opt out" of receiving the calls, there was *no way* to opt out of them directly from the automated message. (Doc. 21-2 ¶31) The messages stated Alore pharmacy was calling and that Plaintiff should contact Alore at 866-938-4482 if he was ready to reorder supplies. *Id*. The was no "opt-out" option given. Plaintiff felt harassed by the calls, frustrated they would not stop after multiple requests, and uncomfortable that he was participating in a fraud upon Medicare. (*Id*. ¶18) As a realtor, Plaintiff had visited many homes of elderly occupants with large stacks of unused test strips from Alore. (*Id*. ¶17).

Defendant has already conceded Alore called Plaintiff at least twenty-nine (29) times *after* Alore had recorded on December 17 and 18, 2018 that he expressly revoked any consent to call his cell phone and cancelled his account (Doc. 19 at 4) (Plaintiff alleges the date of revocation was months earlier and there were at least fifty (50) post-revocation calls between June 2018 and February 2019). (Doc. 21-2 ¶30) Defendant has also conceded that its system qualifies as an Automated Telephone Dialer System ("ATDS"). (Doc. 21 at 2). Thus, Plaintiff has already satisfied <u>every</u> element required for an actionable TCPA claim. Defendant tied up Plaintiff's cellular phone and used up his voicemail capacity; he cellular voicemail box filled up frequently. (Doc. 21-2 ¶17) Plaintiff takes care of multiple elderly and ill family members and friends with diabetes, Parkinson's, and other illnesses. He must be reachable by cell phone for them twenty-four hours a day. Defendant's continued calls interrupted his ability to help them and invaded his privacy. Further Defendant shipped Plaintiff so many test strips "that he could never use them all." (Doc. 21-2 ¶16) Plaintiff

does not think he will be able to use them all before they expire and feels guilty because Medicare paid for them.

## IV.   ARGUMENT

The Washington Consumer Protection Act ("CPA"), RCW 19.86, was enacted by the Legislature to "protect the public and foster fair and honest competition." *Hangman Ridge v. Safeco Title*, 105 Wash. 2d 778, 783 (Wash. 1986). There are two ways a plaintiff may satisfy the requirements of a private action CPA claim; (1) any violation of the Washington Automatic Dialing and Announcing Device ("WADAD"), RCW 80.36.400, is a *per se* violation of the CPA. *See* RCW 80.36.400(3); or (2) by establishing the five *Hangman Ridge* elements. *See Hangman*, 105 Wash 2d at 778. Plaintiff satisfies his CPA claim using both methods. Each approach will be discussed in turn.

### A. Defendant's Violations Of WADAD Are *Per Se* Violations Of The CPA

The WADAD states that "A violation of this section is a violation of chapter 19.86 RCW." *See* RCW 80.36.400(3); *see also Gragg v. Orange Cab Co., Inc.,* 942 F.Supp.2d 1111, 1117–18 (W.D. Wash. 2013) (citing the WADAD language as an example of how the Legislature can ensure that a statutory violation will *per se* establish all five elements of a CPA violation). Plaintiff's First Amended Complaint alleges that Defendant violated the WADAD. (Doc. 21-2 ¶¶48-54).

#### 1.  *Plaintiff's WADAD Claim Is Valid*

Defendant does *not* dispute that it used an automatic dialing and announcing device to contact Plaintiff as alleged. (Doc. 21 at 2) An automatic dialing and announcing device is "a device which automatically dials telephone numbers and plays a recorded message once a connection is made" for "commercial solicitation" purposes. RCW 80.36.400(1). Defendant also does *not* dispute that Defendant continued to call Plaintiff after he did in fact revoke any consent for Defendant to call (Doc. 19, 3) and asked Defendant to stop shipping him unwanted supplies (*Id*.). In fact, through an informal exchange of documents,

Defendant provided Plaintiff with a screenshot of its system showing a note from an Alore agent in December 2018 stating that on that call, Plaintiff *"Was Getting [test strips] from a Local Pharmacy, Placed Number on Do Not Call List and Cancel Account."* However, Alore continued to call Plaintiff many times *after* its own system listed Plaintiff as "Do Not Call." Plaintiff revoked consent and asked for his account to be cancelled in June 2018, long before Alore finally made a notation in its system (Doc. 21-2 ¶13), and he revoked on multiple occasions (*Id.* ¶25).

The TCPA requires "prior express consent" for *non-telemarketing* calls (47 U.S.C. § 227(b)(1)(A)(iii)), but requires "prior express <u>written</u> consent" for any *telemarketing* calls (47 C.F.R. § 64.1200(a)(2)). Defendant did <u>not</u> have either "prior express consent" (for non-telemarketing calls) or "prior express written consent" (for telemarketing calls) once Defendant revoked consent in June 2018. The TCPA defines "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase . . . of, . . ., goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). Defendant called Plaintiff for the sole purpose of encouraging him to purchase diabetic test supplies. Defendant does *not* dispute that it never obtained *written* consent for all calls after Plaintiff's revocation and Defendant does *not* dispute that it never obtained verbal consent after Plaintiff's revocation. Therefore, Defendant had NO consent to call Plaintiff. Given there was no consent and no existing business relationship, those calls could only be considered telemarketing calls.

### 2. *The FCC Has Promulgated Two Exceptions To The TCPA For Certain Calls Related to Health Care Which Are Relevant Here*

Defendant argues in its Opposition to Plaintiff's Motion for Leave to Amend Complaint, which added a WADAD claim, that Plaintiff's leave to amend should be denied because Plaintiff's WADAD claim is "futile." (Doc 24 at 4) Defendant does not argue that Plaintiff does not meet the elements necessary to prevail in a WADAD claim (he does); instead, Defendant argues that a TCPA exception for calls related to health care should

apply to WADAD, while citing no authority that Washington courts have ever done so. However, even if this Court does apply a TCPA health care exception to WADAD, Plaintiff's claim is still valid, as discussed below. Two health care exceptions will be discussed here as it is unclear to which exception Defendant is referring. *Id.*

The first TCPA exception is the "Health Care Rule" exception, which was codified as 47 C.F.R. § 64.1200(a)(2) as part of the 2012 TCPA Order that increased the consent requirement for automated telemarketing calls to need "prior express *written* consent." *Jackson v. Safeway, Inc.,* No. 15-CV-04419-JSC, 2016 U.S. Dist. LEXIS 140763 (N.D. Cal. Oct. 11, 2016) allows only *prior express consent* for calls that deliver a "health care" message based on a business relationship but requires *prior express written consent* for all other telemarketing calls. *See* 47 C.F.R. § 64.1200(a)(2); *see also In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1838 ¶ 20 (Feb. 2012) (hereinafter "2012 TCPA Order").

The second TCPA health care exception is the "Health Care Treatment" exception[2], codified in 47 U.S.C. § 227(b)(2)(C). *See Coleman v. Rite Aid of Georgia, Inc.,* 284 F. Supp. 3d 1343 (N.D. Ga. 2018). In 2015, the FCC created the regulatory exception to the TCPA "when it granted an exemption requested by the American Association of Healthcare Administrative Management ("AAHAM")." *Id.* (citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (hereinafter "2015 TCPA Order"), at 8030). The AAHAM requested that the FCC "exempt from the TCPA's prior-express-consent requirement certain non-telemarketing, healthcare calls that are not charged to the called party." *Id.* at 1349. The FCC granted the AAHAM's

---

[2] The *Coleman* court referred to the 47 U.S.C. § 227(b)(2)(C) exception as the "Health Care Treatment" exception, but it is also referred to as the "Exigent Healthcare Treatment Exemption," as Plaintiff called it in his Reply in Support of His Motion for Leave to Amend Complaint. 47 U.S.C. § 227(b)(2)(C) states that the FCC "may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights this section is intended to protect."

request, subject to certain conditions, "but restrict[ed] it to calls for which there is exigency and that have a healthcare treatment purpose . . ." *Id.* (citing the 2015 TCPA Order, at 8031).

Each TCPA health care exception will now be discussed in turn.

### 3. *Alore's Calls Were "Telemarketing" Calls; The TCPA "Health Care Rule" Exception Does Not Apply Because Alore Did Not Have Consent To Call Plaintiff*

The cases cited by Defendant in its Opposition to Plaintiff's Motion for Leave to Amend Complaint to support its TCPA Health Care Rule exception argument all have a fundamental distinction from the instant case: the plaintiffs in those cases were all existing customers *who had given consent* to be called by the defendants and had *never revoked* that consent. Again, here Alore concedes that Defendant called Plaintiff *after* he revoked consent and cancelled his account (Doc. 19 at 3), thus terminating any prior business relationship.

### a) *To Qualify For The TCPA Health Care Rule Exception, The Caller Must Be A "Covered Entity" or "Business Associate" And Have "Consent."*

A telemarketing call made using an autodialer requires *prior express written consent* under the TCPA. 47 C.F.R. § 64.1200(a)(2). Under the TCPA Health Care Rule exception, the TCPA is excepted for "health care message[s]" only when; (1) prior express consent has been given (it need not be written); and (2) the message is made by a "covered entity" or "business associate." *Id.* Specifically, the TCPA Health Care Rule exception provides that;

> "No person or entity may: Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the **prior express written consent** of the called party or the **prior express consent** of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization, or a call that delivers a **"health care" message made**

**by, or on behalf of, a "covered entity" or its "business associate,"**
as those terms are defined in the HIPAA Privacy Rule…"

*Id*. (emphasis added). One of the cases relied upon by Defendant, makes the two requirements above clear. In *Latner v. Mount Sinai Health Sys., Inc*., the plaintiff went to a Mt. Sinai facility, WPMG, for a routine health examination and filled out new patient forms, providing his contact information for "for payment, treatment and hospital operations purposes." *Latner v. Mount Sinai Health Sys., Inc.,* 879 F.3d 52, 53 (2d Cir. 2018). Later he returned to WPMG and declined any immunizations. *Id*. He then received a single text message reading; "Its flu season again. Your PCP at WPMG is thinking of you! Please call us at 212-247-8100 to schedule an appointment for a flu shot." *Id*. at 54. WPMG only sent the texts to "active patients of WPMG." *Id*. The Second Circuit Court of Appeals found the District Court's analysis "incomplete." The Appellate Court held that although the lower court had "(correctly) determined that the text message 'deliver[ed] a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,' as those are defined in the HIPAA Privacy Rule," it should have completed its analysis by determining "whether plaintiff provided his *prior express consent* to receive the text message." *Id* 55 (emphasis added). The court reasoned that "calls that qualify for the Healthcare Exception 'are exempt from the . . . written consent requirement *but are still covered by the [TCPA's] general consent requirement*.'" *Id*. (emphasis added).

Contrary to WPMG in *Latner*, Alore did not have a "business associate" relationship or prior express consent to call Plaintiff. Further, in informal document exchange in this case, Alore provided a copy of the web form Plaintiff completed back in 2017 offering "free" diabetes supplies. That form stated: "By submitting this form, . . . I hereby give my express written consent to receive *marketing communications* via autodialed and/or prerecorded calls and/or SMS/MMS . . ." Unlike WPMG in *Latner*, which texted "for payment, treatment and hospital operations purposes" (*Id*. at 53), Alore's stated purpose for its calls to Plaintiff was "marketing communications," the opposite of what Alore now

claims in its Opposition to Plaintiff's Motion for Leave to Amend Complaint. (Doc. 24 at 4-5) For the foregoing reasons, Defendant's reliance on *Latner* is misplaced.

> *b) Telemarketing Calls Covered By The TCPA Health Care Rule Exception Require <u>Prior Consent</u>; Without Consent, They Are Just Telemarketing Calls.*

Defendant also depends on *Jackson v. Safeway, Inc.* for the proposition that its calls to Plaintiff were "not unsolicited advertisements." (Doc. 25 at 4); *see also Jackson,* 2016 U.S. Dist. LEXIS 140763. However, Defendant's reliance is again misplaced. There are too many substantive distinctions between *Jackson* and the instant case to make a comparison relevant, the most important being *prior express consent*. In *Jackson*, when plaintiff received a flu shot from the Safeway pharmacy, she also completed a Consent and Release form where she provided her cell number. *Id*. at *3. Through prerecorded phone calls, Safeway called 1) *existing* patients who had provided their number; 2) had received a flu shot at Safeway the previous season; and 3) Safeway had no record they had received a flu shot for the current season. *Id*. at *4. The plaintiff received a voicemail reminding her to get a flu shot and brought an action under the TCPA. *Id*. at *5. Safeway asserted a defense of 47 C.F.R. § 64.1200(a)(2), the "Telemarketing Health Care Exception" (referred to herein as the Health Care Rule exception). *Id*. at *13. The court concluded that "Plaintiff provided her *express consent* to receive such calls under the Telemarketing Health Care Exception and granted summary judgment for Safeway *Id*. at *34. The court also noted in dicta that "Plaintiff did not revoke her consent at any point in time," so even the second call she claimed to have received two months later would have been "within the scope of her provided consent. *Id*. (citing *Reardon*, 115 F. Supp. 3d at 1102 ("The 2015 FCC Order also makes clear that consumers may revoke consent through any reasonable means, either orally or in writing.").

The key facts in *Jackson* are inapposite to the instant case; Plaintiff here expressly revoked consent to be called. Therefore, calls to Plaintiff were NOT excepted by the TCPA Health Care Rule and are in violation of the TCPA. Thus, using Defendant's own argument

that TCPA rules should apply to WADAD, Alore was also in violation of the WADAD. Accordingly, Defendant is also in violation of the CPA through statutory inference.

Defendant may argue that the *Jackson* court also states(in dicta) that "[u]nder the plain language of 47 C.F.R. § 64.1200(a)(2), it appears that "a call that delivers a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate'" is not subject to any consent requirement, written or otherwise." *Id*. at *21. However, the court does not consider the issue and goes on to say that "[f]or purposes of this motion, the Court assumes that the use of prerecorded calls delivering a 'health care' message *requires* prior express consent." *Id*. Nevertheless, the issue of consent *was* later analyzed in depth by the *Coleman* court, and the court's findings are instructive. *See Coleman v. Rite Aid of Georgia, Inc.,* 284 F. Supp. 3d 1343 (N.D. Ga. 2018). In *Coleman*, the plaintiff received pre-recorded automated voice messages on his cell phone from Rite Aid regarding prescription medications; however, the messages were for a different person. *Id*. at *1345. The plaintiff contacted Rite Aid and told them they were calling the wrong number, but they continued to call him, *clearly without consent*. *Id*. The court then scrutinized the consent provision of 47 C.F.R. § 64.1200(a)(2), the TCPA Health Care Rule. *Id*. at *1347. The court determined that most authority found express consent a requirement;

> "Many courts have found that **this provision provides an exemption only from the requirement of prior express written consent, rather than a wholesale exemption from any consent requirement**. See *Latner v. Mount Sinai Health Sys., Inc.,* No. 17-99-cv, 879 F.3d 52, 2018 U.S. App. LEXIS 114, 2018 WL 265085, at *2 (2d Cir. Jan. 3, revised Jan. 9, 2018) (finding that the "FCC exempts from written consent calls to wireless cell numbers if the call 'delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those are defined in the HIPAA Privacy Rule.'" (quoting 47 C.F.R. § 64.1200(a)(2)); *Zani v. Rite Aid Headquarters Corp.,* 246 F. Supp. 3d 835, 845-46 (S.D.N.Y. 2017) (same); *Sullivan v. All Web Leads, Inc.,* No. 17-C-1307, 2017 U.S. Dist. LEXIS 84232, 2017 WL 2378079, at *3 (N.D. Ill. June 1, 2017) ("Despite some ambiguity in the wording of this

'health care rule' . . . , the FCC has clarified that such calls are exempted only from the written consent requirement." (citing *Consumer & Governmental Affairs Bureau Seeks Comment on Petition for Expedited Declaratory Ruling & Exemption from Am. Ass'n of Healthcare Admin. Mgmt.,* 29 FCC Rcd. 15267, 15267 n.7 (Dec. 17, 2014), 2014 WL 7188888 (hereinafter "2014 FCC Public Notice")))."

*Id.* at *1347 (emphasis added). However, the court noted that "at least one other court has held (in dicta) just the opposite." *Id.* at *1348 (citing *Jackson*, 2016 U.S. Dist. LEXIS 140763, at *7). The court used the "Auer deference"[3] to resolve any questionable ambiguity regarding "consent" in the TCPA Health Care Rule. *Id.* The court then concluded that the FCC's express interpretations should be accepted because they were not "plainly erroneous or inconsistent with the regulation." *Id.*

"Accordingly, the Court *defers* to the FCC's interpretation that calls excepted by the Health Care Rule require prior express consent. **Because Coleman avers that he did not provide any consent to the calls made by Rite Aid, the Health Care Rule does not *apply***, and dismissal is not warranted on this ground."

*Coleman,* 284 F. Supp. 3d at *1348 (emphasis added). There is no question that in the instant case, where Plaintiff also did not provide any consent after his revocation, the TCPA Health Care Rule Exception does NOT apply. Therefore, Alore's calls to Plaintiff were telemarketing calls that squarely violate WADAD and were actions of the very nature that WADAD was enacted to prohibit. "The [Washington] legislature finds that the use of automatic dialing and announcing devices for purposes of commercial solicitation: (1) deprives consumers of the opportunity to immediately question a seller about the veracity of their claims; (2) subjects consumers to unwarranted invasions of their privacy; and (3) encourages inefficient and potentially harmful use of the telephone network. The legislature

---

[3] *Id.* (*Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997) ("Auer deterrence is warranted only when the language of the regulation is ambiguous . . . ." (quoting *Christensen v. Harris Cty.,* 529 U.S. 576, 588, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000))).

further finds that it is in the public interest to prohibit the use of automatic dialing and announcing devices for purposes of commercial solicitation." WADAD - RCW 80.36.400, Legislative finding—1986 c 281 § 1. Since Alore's calls violated the WADAD, they also violated the CPA by statutory inference.

### 4. If Alore's Calls Were Covered By The "Health Care Treatment" Exception, Alore Violated The FCC Order Creating The Exception And Therefore Does Not Qualify For Exemption

In the 2015 TCPA Order, the FCC adopted several conditions for each exempted call made by a provider The Health Care Treatment exception. 2015 TCPA Order at 8031. As the *Coleman* court stated, "to meet the exception, a 'healthcare provider must honor ... opt-out requests immediately'" and must further "…offer recipients within each message an easy means to opt out of future such messages…" *Coleman*, 284 F. Supp. 3d at 1350 (quoting the 2015 TCPA Order, at 8032).

Even if this Court were to determine that the communications sent from Defendant were not telemarketing (they were), and adopt the description of the calls provided by Defendant as "prescription refill requests" in its Opposition to Plaintiff's Motion for Leave to Amend Complaint (Doc. 24, 4), such communications would necessarily be subject to requirements of the Health Care Treatment Exception set forth by the 2015 TCPA Order. However, Defendant's own admissions and allegations preclude it from exemption under the Health Care Treatment exception, as Plaintiff has already discussed in his Reply in Support of His Motion for Leave to Amend Complaint. (Doc. 26, 7) In describing the Health Care Treatment Exception, the 2015 TCPA Order requires callers to satisfy *each* of the following seven requirements;

> We adopt the following conditions for each exempted call (voice call or text message) made by or on behalf of a healthcare provider:
>
> 1) voice calls and text messages must be sent, if at all, only to the wireless telephone number provided by the patient;

PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MJOP
CASE # 3:19−CV−05086−BHS

2) voice calls and text messages must state the name and contact information of the healthcare provider (for voice calls, these disclosures would need to be made at the beginning of the call);

3) voice calls and text messages are strictly limited to the purposes permitted in para. 146 above; **must not include any telemarketing, solicitation, or advertising**; may not include accounting, billing, debt-collection, or other financial content; and must comply with HIPAA privacy rules;

4) voice calls and text messages must be concise, generally one minute or less in length for voice calls and 160 characters or less in length for text messages;

5) a healthcare provider may initiate **only one message** (whether by voice call or text message) **per day**, up to a **maximum of three voice calls or text messages combined per week** from a specific healthcare provider;

6) a healthcare provider must offer recipients within each message an **easy means to opt out of future such messages**, voice calls that could be answered by a live person must include an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the call recipient to make an opt-out request prior to terminating the call, voice calls that could be answered by an answering machine or voice mail service must include a toll-free number that the consumer can call to opt out of future healthcare calls, text messages must inform recipients of the ability to opt out by replying " "STOP," which will be the exclusive means by which consumers may opt out of such messages; and,

7) **a healthcare provider *must* honor the opt-out requests immediately.**

2015 TCPA Order, at 8031-8032 (emphasis added); *see also Jackson*, 2016 U.S. Dist. LEXIS 140763, at *11-12.

As stated in Plaintiff's Reply in Support of His Motion for Leave to Amend Complaint, "calls placed to Plaintiff 3) included telemarketing, solicitation, or advertising; 5) occurred more than once per day, and more than three times per week; 6) did not offer

an easy means to opt out of future such messages; and 7) Defendant did not honor the repeated opt-out requests by Plaintiff." (Doc. 26, 8).

Although, for purposes of this motion, the court must accept as true all Plaintiff's allegations, requirement seven above is uncontestedly true. Defendant does not dispute that Defendant continued to call Plaintiff after he did in fact revoke any consent for Defendant to call (Doc. 19, 3), and asked Defendant to stop shipping him unwanted supplies (*See supra* p. 5). As such, Defendant, by its own admissions, is in violation of the seventh requirement and therefore "cannot take shelter under the Health Care Treatment Exception…" *Coleman*, 284 F. Supp. 3d at 1350 ("Rite Aid continued the offending calls after Coleman requested that they stop. Rite Aid therefore cannot utilize the exception on this ground.") *Id*.

Accordingly, because Defendant failed to fulfill the requirements set forth by the FCC for the Health Care Treatment Exception, Plaintiff also satisfies his CPA claim by statutory inference. *See* RCW 80.36.400(3). Plaintiff also satisfies his WADAD claim under the Health Care Rule exception because Defendant does not qualify for the exception due to lack of consent.

### B.    Plaintiff's Complaint Satisfies All Five (5) Elements Of A CPA Claim

However, Plaintiff independently satisfies his CPA claim as well. The Washington Consumer Protection Act ("CPA"), RCW 19.86, was enacted by the Legislature to "protect the public and foster fair and honest competition." *Hangman Ridge,* 105 Wash. 2d at 783. Five elements must be established by a plaintiff to prevail under a private CPA action; (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation. RCW 19.86. All five elements are satisfied by Plaintiff's First Amended Complaint.

#### 1.    *Unsolicited Calls To Plaintiff After Clear Revocation Are Unfair Or Deceptive Acts*

Once a consumer has terminated a prior relationship with a company, it is unfair competition for that company to continue to take advantage of the prior personal

information it had collected about the consumer. Here, Plaintiff *expressly* told Alore many times to stop calling him and to cancel his account. (Doc. 21-2 ¶¶19, 25). Alore's own system verifies this, and that Plaintiff would be getting his supplies from a local pharmacy. Yet, Alore continued to use Plaintiff's phone number, the information that he has diabetes, and other personal information it had gathered, to solicit future business from him at an unfair disadvantage to local pharmacies. Alore also used at least three different phone numbers to deceive Plaintiff into answering its telemarketing calls. Deception becomes easier as technology has improved, since robocallers can easily spoof numbers. Defendant's robocalls were thus unfair and deceptive.

### 2. Defendant's Commercial Solicitation Calls to Plaintiff Clearly Occurred As Part Of Trade Or Commerce

Marketing is a key element of Commerce. Even Defendant, in its Motion for Judgment on the Pleadings, does not question that Plaintiff has satisfied this element. (Doc. 25, 3).

### 3. The TCPA Was Enacted To Impact Public Interest.

If this Court determines Defendant has violated the Telephone Consumer Protection Act ("TCPA"), then Defendant has met the "public interest impact" element of the CPA. The CPA states: "In a private action in which an unfair or deceptive act or practice is alleged under RCW 19.86 a claimant may establish that the act or practice is injurious to the public interest because it: (1) Violates a statute that incorporates this chapter; (2) *Violates a statute that contains a specific legislative declaration of public interest impact*; or (3) (a) Injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons." RCW 19.86.093. "[T]he public interest element [of a CPA claim] is satisfied *per se* by a showing of conduct in violation of a statute containing a specific legislative declaration of public interest impact." *Moritz v. Daniel N. Gordon,* P.C., 895 F. Supp. 2d 1097, 1113 (W.D. Wash. 2012).

Express Congressional intent in passing the TCPA was to "protect the privacy interests of residential telephone subscribers" by placing certain restrictions on the use of unsolicited, automated phone calls made by telemarketers who were "blasting" out advertising by the use of both "facsimile machines and automatic dialers." (*See, e.g.* Senate Report No. 102-178, October 8, 1991, 1991 U.S.C.C.A.N. 1968.)  The Legislative history shows that in enacting the TCPA, the Legislation was adopted as a response to the "increasing number of consumer complaints" regarding "telemarketing calls and communications." *Id.* at 1969. Senator Fritz Hollings, the original bill's sponsor, remarked that indiscriminate "calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall…. These calls are a nuisance and an invasion of our privacy." (Congressional Record – *Senate Proceedings and Debates of the 102nd Congress, First Session*. July 11, 1991, 137 Cong. Rec. S9840, S9874). Almost thirty (30) years later, courts continue to refer to the public interest element of the TCPA; in fact, the Ninth Circuit has repeatedly affirmed that the TCPA withstands a Constitutional First Amendment challenge under intermediate scrutiny because it is "narrowly tailored to advance the 'government's interest in residential privacy. . .'" *Duguid v. Facebook, Inc.,* No. 17-15320, 2019 U.S. App. LEXIS 17675 (9th Cir. June 13, 2019).

As discussed, Defendant has already conceded to Plaintiff that Defendant *has violated the TCPA* by using an automated telephone dialing system to call Plaintiff's cellular phone without Plaintiff's consent; the only question remaining is the date of revocation (i.e. how many calls are at issue). (Doc. 19, 3). Therefore, since the TCPA has stated a legislative public interest impact, the public interest impact element of the CPA has been satisfied.

### 4.  *Plaintiff Has Sustained Injury In His Property.*

Defendant claims in its Motion for Judgment on the Pleadings that Federal district Courts in Washington "have found that allegations of telephonic solicitations are insufficient to sustain a CPA claim." (Doc. 25, 4) However, Defendant misstates the courts'

findings in both cases cited by Defendant to support its argument; *Wick v. Twilio Inc.,* No. C16-00914RSL, 2017 WL 2964855 (W.D. Wash. July 2017), and *Gragg v. Orange Cab Co.,* 942 F. Supp. 2d 1111, 1117–19 (W.D. Wash. 2013). Neither court found such a broad holding as Defendant wishes the Court to believe.

First, the court in *Wick* did find that the plaintiff had failed to state a CPA claim; however, the court's reasoning was based on *consent*. Defendant's quote from that case that there is "no legal or factual basis" for the assertion that "transmitting a solicitation to a cell phone without consent is an unfair or deceptive act" is taken out of context and misconstrues the holding of the court. (Doc. 25, 4) Similar to the instant case, the plaintiff in *Wick* "attempted to obtain a free sample of a product on the web . . ." *See Wick*, 2017 WL 2964855, at *1. The product was from Crevalor, a supplier of hormone enhancers. Immediately after completing the web form, the plaintiff received a single text message that read: "Noah, Your order at Crevalor is incomplete and about to expire. Complete your order by visiting http://hlth.co/xDoXEZ." *Id*. at *15. This is similar to the messages Plaintiff received in the instant case, except Plaintiff did not just receive a single text, but instead received fifty (50) automated phone calls and voicemails. (Doc. 21-2 ¶30) The court in *Wick* found that plaintiff entered his identifying information, . . . agreed to terms . . . and clicked on the 'Rush My Order' button before closing the webpage." *See Wick*, 2017 WL 2964855, at *16. Therefore, the court held the text message he received was not telemarketing because it was "aimed at completing a commercial transaction that he had initiated and for which he had provided his phone number." *Id*. Regarding "consent," the Court concluded that:

> "[T]he text message plaintiff received does not constitute telemarketing. *Because plaintiff consented* to the communications at issue when he submitted his telephone number as part of Crevalor's ordering process, plaintiff fails to plead a TCPA violation."

*Id*. (emphasis added). Finding that the defendant had consent to contact plaintiff, the court went on to state that "To the extent plaintiff has alleged that transmitting a solicitation to a

cell phone <u>without consent</u> is an unfair or deceptive act . . . , it offers no legal or factual basis for such an assertion." *Wick*, 2017 WL 2964855, at *18. The court did not determine that any "allegations of telephonic solicitations are insufficient to state a CPA claim," as Defendant incorrectly states. (Doc. 25, 4) Instead the *Wick* court found that because the defendant had *consent*, its text message was not unfair or deceptive; thus, defendant did not violate the CPA. *Wick*, 2017 WL 2964855, at *16. The reason plaintiff could not satisfy his injury and causation elements was because he had given defendant consent to call him. *Id.* Aside from sending one text instead of making 50 phone calls, the key differentiation in facts is that the defendant in *Wick* had consent and Alore did not. This is inapposite to Defendant's claim that the *Wick* court failed to find a CPA claim because "telephonic solicitations" cannot cause injury. *Id*.

Second, in addition to *Wick*, Defendant cites to *Gragg v. Orange Cab Co.* to support its claim that "telephone solicitations are insufficient to sustain a CPA claim." (Doc. 25, 4). However, no court has *ever* held that. After a diligent search, it seems *Wick* and *Gragg* may be the only cases which consider telemarketing CPA claims. However, the reasoning in *Wick* was about consent (as described above) and the facts in *Gragg* are substantively distinct from the instant case. In *Gragg*, the plaintiff ordered a taxi and was sent a *single* text that his taxi was being dispatched; included in that text was a link to a smart phone application for booking taxis, which was the basis of plaintiff's CPA claim. *Gragg,* 942 F.Supp.2d at 1112. A single text sent with a plaintiff's *consent* is immensely different than the continued harassment of at least fifty (50) *unsolicited* prerecorded calls and voicemails made with no easy way to opt out, after Plaintiff telling Alore at least ten times to stop. Plaintiff must be available by phone at all times to take care of his family and friends. Plaintiff's phone is his property and he uses it all day long (as we all do), and for a telemarketer to repeatedly take over his phone and voicemail storage space via robocalls, even for short periods, is injurious and an invasion of privacy, especially when he has no power to make them stop.

There is a lack of clarity in what constitutes "injury to one's property" under the CPA. Apparently, *Gragg* is the only case that has even addressed that question directly in relation to telemarketing. *Id.* at 1118. The plaintiff in *Gragg* argued an injury of the "loss of the full capacities of plaintiff's cell phone . . . such as diminished electronic storage space." *Id.* at 1119. As the court stated, "the infinitesimal, fleeting loss of electronic storage space that plaintiff alleges . . . can only be described as uncompensable inconvenience." *Id.* It is no wonder that the court failed to find an injury from a single text sent *with consent*. However, it seems that no Washington court has directly considered the *Hangman Ridge* injury and causation elements of a CPA claim based on repeated automated telemarketing robocalls made *without consent*, as is the case here.

Courts have found non-pecuniary injury sufficient for a CPA claim. For example, the case upon which *Gragg* relied found:

> "Monetary damages need not be proved; unquantifiable damages may suffice. *Id.* (loss of goodwill); *NW. Airlines, Inc. v. Ticket Exch., Inc.,* 793 F.Supp. 976 (W.D.Wash., 1992) (proof of injury satisfied by "stowaway theory" where damages are otherwise unquantifiable in case involving deceptive brokerage of frequent flier miles); *Fisons,* 122 Wash.2d 299, 858 P.2d 1054 (damage to professional reputation); *Sorrel v. Eagle Healthcare, Inc*., 110 Wash.App. 290, 298, 38 P.3d 1024 (2002) (injury by delay in refund of money); *Webb v. Ray,* 38 Wash.App. 675, 688 P.2d 534 (1984) (loss of use of property)."

*Panag v. Farmers Ins. Co. of Washington,* 166 Wash. 2d 27, 57–58, 204 P.3d 885, 899 (2009). Further, the Washington Supreme Court held that the "injury element" does not require proof of monetary damages.

> "In *Nordstrom, Inc. v. Tampourlos*, 733 P.2d 208 (1987), we distinguished between the terms "injury" and "damages" and held that "[t]his distinction makes it clear that no monetary damages need be proven, and that nonquantifiable injuries, such as loss of goodwill would suffice for this element of the *Hangman Ridge* test." The fact that the Act allows for injunctive relief bolsters the conclusion that

> injury without specific monetary damages will suffice. A loss of use of property which is causally related to an unfair or deceptive act or practice is sufficient injury to constitute the fourth element of a Consumer Protection Act violation. *Mason v. Mortgage Am., Inc.*, 792 P.2d 142 (1990) . . . When a misrepresentation causes inconvenience that deprives the claimant of the use and enjoyment of his property, the injury element is satisfied. *See Tallmadge v. Aurora Chrysler Plymouth, Inc.*, 605 P.2d 1275 (1979)"

*Stephens v. Omni*, 138 Wn. App. 151, 179-80 (Wash. Ct. App. 2007). The Legislature intended the CPA to be construed liberally. RCW 19.86.920 ("this act shall be liberally construed that its beneficial purposes may be served"). Thus, Plaintiff's injuries should be liberally viewed, especially considering that only one Washington case has interpreted the CPA injury element for telemarketing (with substantive facts so clearly distinct from the instant case) and that the Washington Supreme Court has cited approvingly cases accepting non-monetary injury.

### 5. Alore's Actions Are The Cause Of Plaintiff's Injury.

Defendant's bombardment of telemarketing robocalls and automated voicemail messages was directly responsible for taking over Plaintiff's property (cell phone) and filling up his voicemail box causing him to miss calls. But for Defendant's actions, Plaintiff would not have suffered injury in his property; thus, causation is satisfied.

## V.   CONCLUSION

Plaintiff has made sufficient allegations in his complaint to make both his CPA and WADAD claims plausible. As a matter of law, Plaintiff's complaint survives Defendant's motion for judgment on the pleadings. Therefore, for the foregoing reasons, the Court should deny Defendant's motion.

RESPECTFULLY SUBMITTED,

DATED: July 15, 2019

*/s/Dawn M. McCraw*
Dawn M. McCraw, WSBA #54543
Price law Group, APC
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5585
F: (866) 683-3985
E: dawn@pricelawgroup.com
*Attorney for Plaintiff*
*Allen Taylor*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2019, I electronically filed the following document(s) with the Clerk of the Court using the ECF system:

1) Plaintiff's Memorandum of Law in Opposition to Defendant Alore, LLC's Motion for Judgment on the Pleadings

Notice of such filing will be sent to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

Dated: July 15, 2019                                    PRICE LAW GROUP, APC

*/s/Jacey Gutierrez*

PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MJOP
CASE # 3:19−CV−05086−BHS